## KENNEDY v. SLADE. *
### Patent Appeal No. 2616.

Court of Customs and Patent Appeals.
March 2, 1931.

BLAND, Associate Judge, dissenting.

Gustave R. Thompson, of New York City (Milans & Milans, of Washington, D. C., of counsel), for appellant.

*Rehearing denied.

Elmer Stewart, of Washington, D. C., for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

An interference proceeding was instituted in the Patent Office upon the application of the appellant Kennedy, Serial No. 37,713, filed June 17, 1925, and an application filed by the appellee Slade, Serial No. 681,112, on December 17, 1923. Each of these applications sought a patent for an invention relating to the connection of a tractor and a semitrailer in road vehicles, by which connection the same would be joined together to form a single closed body, and particularly to a weathertight closure between said tractor and trailer by means of which the tractor and trailer might assume any angular movement with respect to each other, and still remain in such condition of closure. The subject-matter of the interference is stated in eight counts, of which counts 1 and 2 are given as illustrative:

"1. In a vehicle, two or more articulated units, means on the end of one of said units to receive an adjacent unit and complementary means on said adjacent unit adapted for extended interfitting closure engagement with said first named unit independent of any relative angular movement between said units.

"2. In an articulated vehicle whose several sections are connected as to permit relative changes of angularity in all planes, a body closure construction providing interfitting means whereby the several body sections are maintained in weathertight contact regardless of relative angular changes."

Priority was awarded by both tribunals in the Patent Office to the appellee Slade. The Board of Appeals, in its written decision filed in the case, stated the following:

"The record shows that the junior party, Kennedy, had been active in this art for some time; that he established the Kennedy Engineering Corporation for the purpose of building these motor vehicles; and that he had previously filed, on May 24, 1922, an application relating to this general subject matter, as shown by his Exhibit A, which is a copy of the Patent Office drawing in that application. During November, 1923, the party Slade became associated with Kennedy in the enterprise, the two occupying the positions, respectively, of vice-president and president of the Kennedy Engineering Corpora-

tion. According to the testimony of Kennedy (X Q. 35), he devoted his energies especially to the business end of the organization, while Slade devoted his attention principally to the designing work.

"The testimony is to the effect that Kennedy developed his model, Exhibit E, early in January, 1923, and disclosed it to Slade and the other members of the corporation prior to any development by Slade; that the device as designed by Kennedy was considered cumbersome and exceedingly impractical and was followed in a few days by Slade's development of his spherical closure which, it was agreed by all interested parties, was a superior construction; and that his design was adopted and built into the first coach shown in photograph, Exhibit I, and completed in December, 1923. There is conflicting testimony as to whether Kennedy's Exhibit F, developed shortly after Kennedy's Exhibit E, was made before or after Slade's model. The examiner of interferences held Kennedy had not established that it was made ahead of Slade's model.

"The first and main question for consideration is whether Kennedy's Exhibit E fairly discloses the issue of the interference. All the counts call for a closure between the two units, or the tractor and semi-trailer elements, during angular or vertical and horizontal movements between the two elements. Count 2 distinctly specifies a weather-tight contact, and it is believed that the term 'closure' in all of the counts implies a weather-tight closure since this is the very purpose of the invention. We agree with the examiner of interferences that Kennedy's Exhibit E does not disclose such a closure. A projection of the tractor into the opening of the cylinder does not fill the opening but leaves a considerable space above or below it. This space is apparently necessary to permit the ends of the tractor projection to move up and down. (Kennedy's testimony, page 10).

"Kennedy's Exhibit F is an extremely crude pasteboard model showing a somewhat different construction. It does not show a weather-tight closure of the rear end of the tractor with the forward end of the trailer, and appears to be no better as evidence of conception of the invention of the issue than Kennedy's Exhibit E. It therefore is immaterial whether this Exhibit was made before or after Slade's model.

"It is further noted that neither of the Exhibits E or F upon which Kennedy relies shows the operator's seat and control mechanism called for in count 6, nor the enclosure or compartment for the operator mentioned in counts 5 and 8.

"We agree with the examiner of Interferences that Kennedy had a conception of the problem of the desirability of doing what the invention is designed to do, but he fails to show any adequate conception of means for accomplishing the result (Herman v. Fullman, 1903 C. D. 452, and Mergenthaler v. Scudder, 1897 C. D. 724). It follows that Slade was the first to conceive and the first to reduce to practice, and was rightly entitled to an award of priority by the examiner of interferences.

"Another aspect of the case detrimental to Kennedy arises from the fact that he gave up his construction in favor of the Slade construction; that he knew of the filing of the Slade application and of the several steps of its prosecution, and that he collaborated with Slade in the matter (Kennedy's testimony, X Qs. 57–59). It appears from the record that he was satisfied with this situation as long as he thought that the Slade application or patent would be assigned to the corporation. Although such an assignment was drawn up for Slade to sign, as shown by Slade's Exhibit F, he left the corporation and went to Paris without making such an assignment. Kennedy was a man of experience in patent matters and he should have known that if he made the broad invention and disclosed it to Slade this should have been embodied in his own instead of in the Slade application. Such a situation is analogous to that in the case of Murphy v. Meissner, 1905 C. D. 592, in which the Court said:

"'It must suffice to say that the question is really not one of priority of invention, but of originality; that the relations of the parties to each other were such that one must have derived the invention from the other; that the appellee shows the earlier conception and reduction to practice; and that the testimony of the principal witness for the appellant shows quite conclusively that the invention belonged to the appellee, and not to the appellant. This witness, who was the person most interested in sustaining the claim of the appellant, testified that the appellee filed his application at the request and solicitation of the witness, and that no other application would have been filed if the appellee had not refused to assign his application to the company which employed him, after the application had been filed. And this witness was a man familiar with patents, and had taken out many himself. It cannot be

supposed that he would have urged the appellee to make the application, if the invention had been really made by his own son, the appellant here.'

"As held by the Court in that case, these circumstances are believed to show quite conclusively that the senior party is the inventor."

In this statement of law and fact by the Board of Appeals, we concur. It is quite apparent, from this record, that Slade was the inventor of the device which is here in litigation.

Little further comment on the matter is necessary. The appellant argues that Slade's failure to testify should be taken as a failure to meet the burden of proof which, it is argued, is cast upon him after Kennedy has established a prima facie case of prior invention. This might be true if Kennedy had so established priority. As the Board of Appeals has found, and in which finding we have concurred, Kennedy did not establish such a prima facie case. In fact, the showing made by him, in our opinion, fully establishes that Slade was the inventor and not he.

The decision of the Board of Appeals is affirmed.

Affirmed.

BLAND, Associate Judge (dissenting).

Count 1 calls for "two or more articulated units" with "interfitting closure engagement" with a "relative angular movement between said units."

Count 2 calls for a "weathertight contact regardless of relative angular changes."

If any distinction is to be made between the two counts, it seems to me that the record is clear that Kennedy was the first and only one to *conceive* the idea of the two or more articulated units and the subject matter of count 1. Indeed, it is not disputed that he was the first to conceive this notion and to disclose it, by the use of two models, to Slade. Slade improved on the Kennedy structure, reduced it to practice and filed application for a patent.

Slade can only have priority in an invention. "An invention is the result of an inventive act; it consists in conceiving an idea and reducing it to practice." Walker on Patents, Lotsch Rev. (6th Ed.) § 59, p. 66. Slade

took Kennedy's conception and improved it and reduced it to practice. He is entitled to reward for his improvement, but should not be rewarded by being granted a monopoly for reducing to practice an art first conceived and taught by another. The art which was first conceived and taught by another was the broad idea of two or more articulated units with interfitting closure engagement with relative angular movement between said units, which count 1 calls for.

Probably Slade did first conceive a certain kind of "weathertight contact" structure called for broadly in count 2, but he certainly was not the first to conceive and disclose the broad idea set out in count 1.

Any subsequent conduct on the part of the two cannot supply the lack of invention in Slade for count 1.

That Kennedy reduced to practice the subject-matter of count 1 is not questioned, and he, being the original inventor of the subject matter of this count, should be awarded priority therein. It makes no difference if Slade was the first to reduce to practice as to the improvements he made. He did not *conceive* and reduce to practice the broad subject matter of count 1.

The majority opinion affirms the view expressed by the board that "we agree with the examiner of Interferences that Kennedy had a conception of the problem of the desirability of doing what the invention is designed to do." Kennedy not only had a conception of the desirability of doing what count 1 calls for, but he constructed a model which did everything count 1 calls for and disclosed it to Slade. Slade's invention began from that point.

For the reasons above assigned, priority in count 1 should be awarded to Kennedy. To me it is not very clear that Slade was the inventor of the subject-matter of count 2, but on account of my doubts on this question, I am not disposed to disagree with the conclusion reached by my associates and the Board of Appeals.

If I agreed with the majority that Kennedy did not have a complete conception of the subject-matter of count 1, I would hesitate a long while before I would conclude that there was not a joint invention of this count and that as a consequence neither of them was entitled to priority over the other.